**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

**CASE NO:**   4:24-cv-5893-JD

WILLIAM FORTNER, and
AUTUMN MCMANUS, individually,
and on behalf of themselves and
all others similarly situated,

      Plaintiff(s),

      v.

21 MAIN NORTH BEACH, LLC, a
South Carolina limited liability company,
and LOVIN' OVEN CATERING OF
SUFFOLK, LLC, a Delaware limited
liability company,

      Defendant.
_____/

## COLLECTIVE/CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, WILLIAM FORTNER ("Fortner"), and AUTUMN MCMANUS ("McManus") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, and the South Carolina Payment of Wages Act ("SCPWA"), file this Collective/Class Action Complaint for Damages and Demand for Jury Trial against Defendants, 21 MAIN NORTH BEACH, LLC ("21 Main"), and LOVIN' OVEN CATERING OF SUFFOLK, LLC ("Lovin' Oven") (collectively, "Defendants"), and allege as follows:

### INTRODUCTION

1.      Defendants own and operate the North Beach Resort located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582. The North Beach Resort offers guests numerous on-site dining options and venue spaces. During the 3-years preceding the filing of this

1

Collective/Class Action Complaint, the Defendants employed Bartenders and Servers at various dining venues and facilities at North Beach Resort and failed to pay these hard-working individuals applicable minimum and overtime wages. Plaintiffs bring these claims both as a collective and class action under the Fair Labor Standards Act ("FLSA"), and South Carolina Payment of Wages Act ("SCPWA"), on behalf of themselves and all other Bartenders and Servers who work or have worked at these dining venues and/or facilities at North Beach Resort during the applicable statute of limitations. Defendants committed federal and state wage violations because they (1) compensated Plaintiffs and all other Bartenders and Servers employed on their property at a reduced sub-minimum wage but failed to provide them with statutorily required notice of their intent to rely upon a tip credit; (2) required Plaintiffs and all other Bartenders and Servers to surrender portions of their tips to pay for cash register shortages and/or share tips with supervisors and/or managers; (3) required Plaintiffs and Bartenders and Servers to work more than 40 hours without paying them the appropriate federal overtime wages for this work; (4) required Plaintiffs and all other Bartenders and Servers to work more than 40 hours in workweeks when they were paid at more than one hourly rate and failed to properly calculate overtime wages owed; and (5) terminated Plaintiff, Fortner, in direct response to him attempting to address certain wage compliance issues with Defendants. As a result, Plaintiffs and all similarly situated Bartenders and Servers have been denied federal and state minimum wages and hard-earned tips during various workweeks within the relevant time period and are entitled to recover this compensation.

## PARTIES

2.     During all times material hereto, Plaintiff, Fortner, was a resident of Horry County, South Carolina, over the age of 18 years, and otherwise *sui juris.*

2

3.     During all times material hereto, Plaintiff, McManus, was a resident of Horry County, South Carolina, over the age of 18 years, and otherwise *sui juris.*

4.     Plaintiff, Fortner, and the **FLSA Bartender Collectives** are/were Bartenders who worked for Defendants within the last three (3) years at North Beach Resort located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582, at one or more of the following venues on the Property: 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill; North Beach Pizza Co.; and/or 21 Main Events.

5.     Plaintiff, McManus, and the **FLSA Server Collectives** are/were Servers who worked for Defendants within the last three (3) years at North Beach Resort located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582, at one or more of the following venues on the Property: 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill; North Beach Pizza Co.; and/or 21 Main Events.

6.     Plaintiff, Fortner, and the **SCPWA Bartender Class** are/were Bartenders who worked for Defendants within the last three (3) years at North Beach Resort located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582, at one or more of the following venues on the Property: 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill; North Beach Pizza Co.; and/or 21 Main Events, and who do not opt-out of this class.

7.     Plaintiff, McManus, and the **SCPWA Server Class** are/were Servers who worked for Defendants within the last three (3) years at North Beach Resort located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582, at one or more of the following venues on the Property: 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill; North Beach Pizza Co.; and/or 21 Main Events, and who do not opt-out of this class.

8.      Plaintiff, Fortner, worked for Defendants as a Bartender at Cabana Club Pool Side Bar & Grill, North Beach Pizza Co., and 21 Main Events from in or around 2018 through May 2023.

9.      Plaintiff, McManus, worked for Defendants as a Server and Bartender at 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill, and 21 Main Events from in or around September 2021 through September 2023. Plaintiff, McManus, worked for Defendants occasionally as an assistant manager at 21 Main Prime Steakhouse beginning in 2022 through the end of her employment.

10.     The proposed **Bartender Collective** members worked for Defendants in the same capacity as Plaintiff, Fortner, in that they were Bartenders employed by Defendants and were subject to the same practices and policies enforced by Defendants at the aforementioned venues on its property located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

11.     The proposed **Server Collective** members worked for Defendants in the same capacity as Plaintiff, McManus, in that they were Servers employed by Defendants and were subject to the same practices and policies enforced by Defendants at the aforementioned venues on its property located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

12.     The proposed **Overtime Collective** members worked for Defendants in the same capacity as Plaintiffs, Fortner and McManus, in that they were Servers and/or Bartenders employed by Defendants and were subject to the same practices and policies enforced by Defendants at the aforementioned venues on its property located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

13.     Plaintiffs seek certification of eight (8) collectives under 29 U.S.C. § 216(b) for violations of the FLSA as follows:

**<u>Bartender Tip Credit Notice Collective</u>**: All Bartenders who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage.

**<u>Server Tip Credit Notice Collective</u>**: All Servers who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage.

**<u>Bartender Tip Share Collective</u>**: All Bartenders who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina, during the previous three (3) years who were required to surrender portions of their tips to cover cash register shortages or share any portions of their tips with supervisors and/or managers.

**<u>Server Tip Share Collective</u>**: All Servers who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina, during the previous three (3) years who were required to surrender portions of their tips to cover cash register shortages or share any portions of their tips with supervisors and/or managers.

**<u>Bartender Tip Credit Notice Overtime Collective</u>**: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek.

**<u>Server Tip Credit Notice Overtime Collective</u>**: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek.

**<u>Bartender Multiple Rate Overtime Collective</u>**: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek where they were paid more than one hourly rate.

**<u>Server Multiple Rate Overtime Collective</u>**: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three

**(3) years who worked more than 40 hours in any workweek where they were paid more than one hourly rate.**

14.     Plaintiffs seek certification of two (2) classes under Fed. R. Civ. P. 23 for violations of the South Carolina Payment of Wages Act ("SCPWA") as follows:

> **Bartender Class: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who do not affirmatively opt-out.**

> **Server Class: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who do not affirmatively opt-out.**

15.     The precise size and identity of each collective and class will be ascertainable from the business records, tax records, and/or personnel records of Defendants; however, Plaintiffs estimate that the total number of members in each collective and class exceeds fifty (50) Servers and fifty (50) Bartenders.

16.     During all times material hereto, Defendant, 21 Main, was a South Carolina limited liability company operating and transacting business within Horry County, South Carolina, within the jurisdiction of this Honorable Court. Defendant, 21 Main, may be served through its registered agent Otis Allen Jeffcoat III, 950 48th Ave. North Myrtle Beach, South Carolina 29577.

17.     During all times material hereto, Defendant, 21 Main, owned, operated, and controlled North Beach Resort, located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

18.     Defendant, 21 Main, was the "employer" of Plaintiffs and all members of the putative Collectives and Classes as that term is defined by the FLSA during all times pertinent to the allegations herein.

19.     During all times material hereto, Defendant, 21 Main, was vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of North Beach Resort, located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

20.     Defendant, 21 Main, implements uniform pay, tip, and time-keeping practices at various restaurants, bars, and venues at North Beach Resort, that apply to all Servers and Bartenders.

21.     During all times material hereto, Defendant, Lovin' Oven, was a Delaware limited liability company operating and transacting business within Horry County, South Carolina, within the jurisdiction of this Honorable Court.

22.     During all times material hereto, Defendant, Lovin' Oven, owned, operated, and controlled North Beach Resort located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

23.     Defendant, Lovin' Oven, was the "employer" of Plaintiffs and all members of the putative Collectives and Classes as that term is defined by the FLSA during all times pertinent to the allegations herein.

24.     During all times material hereto, Defendant, Lovin' Oven, was vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of North Beach Resort, located at 719 North Beach Blvd. in North Myrtle Beach, South Carolina 29582.

25.     Defendant, Lovin' Oven, implements uniform pay, tip, and time-keeping practices at various restaurants, bars, and venues at North Beach Resort, that apply to all Servers and Bartenders.

26.     Plaintiffs and putative collective and class members are/were employed by Defendants as non-exempt, hourly Servers and Bartenders

27.     Plaintiffs and putative collective and class members are/were non-exempt, hourly Servers and Bartenders.

## JURISDICTION AND VENUE

28.      This action is brought under 29 U.S.C. § 216(b) to recover damages, reasonable attorney's fees, and reimbursable costs from Defendant.

29.     The acts and/or omissions giving rise to this dispute took place within North Myrtle Beach, South Carolina, which falls within the jurisdiction of this Honorable Court.

30.     Defendants regularly transact business in North Myrtle Beach, South Carolina, where they developed, implemented, and enforced the unlawful policies and practices alleged herein, and jurisdiction is therefore proper.

31.     Venue is also proper within North Myrtle Beach, South Carolina.

## FLSA COVERAGE

32.     Defendant, 21 Main, is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two or more employees engaged in commerce or in the production of goods for commerce, or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

33.     During all time periods pertinent hereto, Defendant, 21 Main's employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, pickles, ranch dressing, pretzels, cheese, mustard, chicken, honey mustard, chicken, Monterey Jack cheese, jalapenos, spinach, red pepper, black beans, spices, onions, mozzarella cheese, marinara sauce,

mushrooms, cream cheese, shrimp, hot sauce, celery, bleu cheese, cocktail sauce, mahi, pineapple, cilantro, tartar sauce, chips, cheddar cheese, lettuce, tomato, sour cream, wings, teriyaki, potatoes, barbeque sauce, bacon, chips, tortillas, onions, steak, prime rib, green peppers, banana peppers, Italian dressing, thousand island dressing, Caesar dressing, balsamic vinaigrette, oil, vinegar, crackers, red onion, croutons, parmesan cheese, ham, turkey, salami, pepperoni, tuna, coleslaw, beef, provolone cheese, mayonnaise, ketchup, brioche buns, American cheese, cod, relish, tomato basil wraps, spinach wraps, flour wraps, wheat wraps, black olives, salt, pepper, oregano, swiss cheese, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, flour, coffee, tea, soda, and other goods and materials that had previously travelled through interstate commerce.

34.     Defendant, 21 Main, had gross annual revenues in excess of $500,000.00 in 2021, 2022, 2023, and is expected to have gross annual revenues in excess of $500,000.00 in 2024.

35.     Defendant, Lovin's Oven, is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two or more employees engaged in commerce or in the production of goods for commerce, or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

36.     During all time periods pertinent hereto, Defendant, Lovin' Oven's employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, pickles, ranch dressing, pretzels, cheese, mustard, chicken, honey mustard, chicken, Monterey Jack cheese, jalapenos, spinach, red pepper, black beans, spices, onions, mozzarella cheese, marinara sauce, mushrooms, cream cheese, shrimp, hot sauce, celery, bleu cheese, cocktail sauce, mahi, pineapple, cilantro, tartar sauce, chips, cheddar cheese, lettuce, tomato, sour cream, wings,

teriyaki, potatoes, barbeque sauce, bacon, chips, tortillas, onions, steak, prime rib, green peppers, banana peppers, Italian dressing, thousand island dressing, Caesar dressing, balsamic vinaigrette, oil, vinegar, crackers, red onion, croutons, parmesan cheese, ham, turkey, salami, pepperoni, tuna, coleslaw, beef, provolone cheese, mayonnaise, ketchup, brioche buns, American cheese, cod, relish, tomato basil wraps, spinach wraps, flour wraps, wheat wraps, black olives, salt, pepper, oregano, swiss cheese, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, flour, coffee, tea, soda, and other goods and materials that had previously travelled through interstate commerce.

37.    Defendant, Lovin' Oven, had gross annual revenues in excess of $500,000.00 in 2021, 2022, 2023, and is expected to have gross annual revenue in excess of $500,000.00 in 2024.

38.    Defendants, 21 Main, and Lovin' Oven, collectively had gross annual revenues in excess of $500,000.00 in 2021, 2022, 2023, and are expected to collectively have gross annual revenue in excess of $500,000.00 in 2024

## DEFENDANTS JOINTLY OWN AND OPERATE
## DINING VENUES AND FACILITIES AT NORTH BEACH RESORT

39.    Defendants, 21 Main, and Lovin' Oven, jointly own and operate dining venues/facilities at North Beach Resort.

40.    Defendants, 21 Main, and Lovin' Oven, while transacting business in North Myrtle Beach, South Carolina, and jointly operating the North Beach Resort, maintained and shared a principal place of business in Bohemia, New York.[1]

41.    According to their own website, Defendants, 21 Main, and Lovin' Oven own and operate the following venues and facilities where they employ Servers and Bartenders on the North

---

[1] On the Form W-2 it issues to employees, Defendant, Main 21, lists its address as 640 Johnson Ave. Suite 103, Bohemia, New York.

Beach Resort property: (1) 21 Main Prime Steakhouse[2]; (2) Cabana Club Pool Side Bar & Grill[3]; and (3) North Beach Pizza Co[4].; and (4) 21 Main Events:



*See* www.lovinoven.com/myrtle-beach-venues.php (last visited October 11, 2024).

42.    On each of their websites, the above venues state that they are "owned and operated by Lovin' Oven Catering of Suffolk, LLC." *See* www.northbeachpizzaco.com; www.21maineventsatnorthbeach.com; www.21mainatnorthbeach.com.

43.    Defendant, 21 Main, was responsible for issuing paychecks to Servers and Bartenders during the relevant time period for work performed on the property and for the benefit of both Defendants.

44.    In order to properly staff these dining venues and facilities at North Beach Resort, Defendants utilize various online job posting websites including www.indeed.com, where they collectively advertise job postings for all of these dining venues and facilities. Below is a true and accurate screenshot of the Indeed job posting that the Defendants jointly maintain:

---

[2] 21 Main Prime Steakhouse's hours of operation are 4:00 p.m. to 9:30 p.m. daily.

[3] Cabana Club Pool Side Bar & Grill's hours of operation are 10:00 a.m. to 10:00 p.m. daily.

[4] North Beach Pizza Co.'s hours of operation are 7:00 a.m. to 10:00 p.m. daily.



45.     Plaintiffs and the putative FLSA collectives and SCPWA Classes were subject to common control of the Defendants during their employment periods.

46.     Defendants, 21 Main, and Lovin' Oven, shared financial resources and employees in furtherance of their joint business operation.

47.     Defendants were collectively responsible for paying Plaintiffs and the putative FLSA collectives and SCPWA Classes wages that were complaint with both the FLSA and South Carolina law.

<b>DEFENDANTS FAIL TO PROVIDE<br>SUFFICIENT NOTICE OF THE TIP CREDIT TO SERVERS AND BARTENDERS</b>

48.     Defendants hire Bartenders and Servers to work at North Beach Resort.

49.     When Defendants hire Bartenders (regardless of whether they work at 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill, North Beach Pizza Co., or 21 Main Events), they pay Bartenders less than the federal minimum wage and attempt to credit a portion

of the tips earned by Bartenders working at these venues and facilities toward their federal minimum wage obligations.

50.    Defendants paid Bartenders, including Plaintiffs, Fortner, and McManus, $4.50 per hour for working bartending shifts.

51.    However, both Defendants fail to provide their Bartenders, including Plaintiffs, Fortner and McManus, with sufficient notice of the tip credit under federal law.

52.    Plaintiffs, Fortner and McManus, were not provided notice of the tip credit at the inception of their employment or any point thereafter.

53.    When Defendants hire Servers (regardless of whether they work at 21 Main Prime Steakhouse, Cabana Club Pool Side Bar & Grill, or North Beach Pizza Co.), they pay Servers less than the federal minimum wage and attempt to credit a portion of the tips earned by Servers working at these venues and facilities toward their federal minimum wage obligations.

54.    Defendants paid Servers, including Plaintiff, McManus, $2.13 per hour for working serving shifts.

55.    However, both Defendants fail to provide their Servers, including Plaintiff, McManus, with sufficient notice of the tip credit under federal law.

56.    Plaintiff, McManus, was not provided notice of the tip credit at the inception of her employment or any point thereafter.

57.    Moreover, when Plaintiff, McManus, worked as assistant manager for Defendants, there was no policy to inform Servers or Bartenders about the tip credit under the FLSA when they were hired.

58.     During all times material hereto, Defendants **<u>did not</u>**: (1) provide the full statutorily required tip credit notice under federal law to Servers and Bartenders; or (2) pay the full federal minimum wage for each hour worked by Servers and Bartenders.

<u>**DEFENDANTS REQUIRED BARTENDERS AND SERVERS TO SURRENDER PORTIONS OF THEIR EARNED TIPS TO COVER CASH REGISTER SHORTAGES AND SHARE PORTIONS OF THEIR TIPS WITH SUPERVISORS AND MANAGERS**</u>

59.     Defendants implemented and regularly enforced a property-wide policy at each of their dining venues that required all Bartenders and Servers to surrender portions of their earned tips to cover cash register shortages during certain shifts of their employment.

60.     Defendants implemented and regularly enforced a property-wide policy at each of their dining venues that required all Bartenders and Servers to share portions of their tips with supervisors and managers for each shift of their employment.

61.     Plaintiff, Fortner, personally had to share portions of his earned tips with managers.

62.     Plaintiff, Fortner, personally witnessed managers take tips earned by Bartenders to cover cash register shortages.

63.     Plaintiff, McManus, personally had to share portions of her earned tips with managers.

64.     Plaintiff, McManus, personally witnessed managers take tips earned by Bartenders to cover cash register shortages.

65.     Plaintiff, McManus, personally witnessed managers take tips earned by Servers to cover cash register shortages.

66.     Defendants imposed these requirements in an effort to require the Bartenders and Servers to offset any financial losses suffered by Defendants and to subsidize the salaries paid to supervisors and managers employed by the Defendants.

67.    This tip surrender and sharing requirement is not optional, and Bartenders and Servers are not permitted to work unless they comply with the tip policies.

68.    Plaintiffs and other Bartenders and Servers did not voluntarily surrender these tips.

69.    As a result of these tip surrender and/or sharing requirements, the Defendants are not permitted to take any tip credit toward the federal minimum wage and must repay any and all tips Bartenders and Servers were required to surrender or impermissibly share during the relevant time period.

70.    As a result of this tip surrender and/or sharing policy, Plaintiffs and other similarly situated Bartenders and Servers are entitled to recover full federal minimum wage under the FLSA, and recover all surrendered and/or shared tips, in one or more workweeks of their employment, within the past 3 years.

## DEFENDANTS REQUIRE BARTENDERS AND SERVERS TO WORK SPECIAL EVENTS AT THE 21 MAIN EVENTS VENUE

71.    Defendants utilized their 21 Main Events venue on the North Beach Resort property to host weddings, receptions, and special events during the past three years.

72.    Defendants required Plaintiffs and other Bartenders and Servers to work special events on-site at the property's 21 Main Events venue in order to receive their regularly scheduled shifts at other venues on the property.

73.    When Servers worked a special event, they were compensated approximately $12.00 per hour.

74.    When Bartenders worked a special event, they were compensated approximately $4.50 per hour.

75.    When Plaintiffs and other Servers and Bartenders worked special events at 21 Main Events, they were not permitted to receive tips from guests.

76.    If a guest nevertheless requested to leave any gratuity for Plaintiffs and other Bartenders and Servers, the Bartenders and Servers were not permitted to keep the entirety of the tips they earned.

77.    The Defendants and/or managers and/or supervisors kept and maintained a portion of these tips earned by the Bartenders and Servers at 21 Main Events in violation of the FLSA.

78.    Moreover, Defendants charged guests who rented out the 21 Main Events space an automatic service charge which was applied to the total bill but did apportion any of the proceeds of service charge to the Bartenders or Servers who worked these events.

## DEFENDANTS REQUIRE BARTENDERS TO WORK SHIFTS AT NORTH BEACH PIZZA CO.

79.    One of the dining venues owned and operated by Defendants at the North Beach Resort is North Beach Pizza Co.

80.    Defendants required Plaintiffs and other Bartenders who worked at the Cabana Club Pool Side Bar & Grill to also work shifts at the property's North Beach Pizza Co. in order to receive their regularly scheduled shifts at Cabana Club Pool Side Bar & Grill.

81.    When Bartenders worked a shift at North Beach Pizza Co., they were compensated $10.00 per hour.

## DEFENDANTS FAILED TO PROVIDE NOTICE OF ITS INTENT TO RELY UPON A TIP CREDIT TOWARD FEDERAL OVERTIME REQUIREMENTS AND SUBSEQUENTLY FAILED TO PROPERLY CALCULATE OVERTIME WAGES WHEN BARTENDERS AND SERVERS WORKED OVER 40 HOURS IN A WORKWEEK IN WHICH THEY WERE PAID AT DIFFERENT HOURLY RATES

82.    Defendants frequently required Plaintiffs and other Bartenders and Servers to work more than 40 hours in a workweek at North Beach Resort.

83.    However, Defendants failed to provide Bartenders and Servers with statutorily required notice of its intent to take a tip credit toward the federal overtime wages owed when these workers performed more than 40 hours of work in a workweek.

84.    Plaintiffs and all other similarly situated Bartenders and Servers are/were entitled to receive full federal overtime wages when they worked over 40 hours in a workweek for Defendants.

85.    Under federal law, "[t]he general overtime pay standard in Section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually paid." *See* 29 C.F.R. § 778.107.

86.    Pursuant to 29 C.F.R. § 778.115, "[w]here an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs…" *Id.*

87.    When Defendants required Bartenders to work shifts at North Beach Pizza Co., they paid the Bartenders $10.00 per hour – an hourly rate that is different from the $4.50 paid per hour when the Bartenders worked at Cabana Club Pool Side Bar & Grill and/or 21 Main Steakhouse.

88.    Defendants' overtime pay policy at issue in this case violated the FLSA because it failed to compute the weighted average of the hourly rates before paying the overtime premium in weeks where Bartenders worked more than 40 hours and were paid at more than one hourly rate.

89. When Defendants required Servers to work shifts at 21 Main Events, they paid the Servers $12.00 per hour – an hourly rate that is different from the $2.13 paid per hour when the Servers worked at 21 Main Steakhouse.

90. Defendants' overtime pay policy at issue in this case violated the FLSA because it relied on a tip credit without providing requisite notice and then failed to compute the weighted average of the hourly rates before paying the overtime premium in weeks where Servers worked more than 40 hours and were paid at more than one hourly rate.

91. As a result of the illegal overtime policy enforced at North Beach Resort the Defendants must pay Plaintiff and similarly situated Servers and Bartenders the full amount of overtime wages they earned when working over 40 hours in a workweek where they were compensated at more than one hourly rate.

92. During their employment, Plaintiffs and one or more members of the collective complained about the illegal practices above; however, Defendants took no action to stop its illegal pay practices.

93. More specifically, Plaintiff, Fortner, verbally complained about these practices to management on more than one occasion during the past 3 years.

94. Although Defendants were aware of the requirements of the FLSA, and the pertinent regulations thereto, Defendants willfully and/or intentionally failed to pay Plaintiffs and the putative collective members in accordance with federal law.

## COUNT I - COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (On Behalf of Fortner, McManus, and the Bartender Tip Credit Notice Collective)

95. Plaintiffs, Fortner and McManus, hereby re-allege and re-aver Paragraphs 1 through 94 as though set forth fully herein.

96.    Plaintiffs, Fortner and McManus, and all other similarly situated Bartenders are/were entitled to be paid the full federal minimum wage in one or more workweeks for certain hours worked during their employment with Defendants.

97.    Defendants claimed a tip credit under federal law for each hour of work Plaintiffs, Fortner, McManus, and all other Bartenders performed during all times material hereto.

98.    Defendants attempted to rely on the FLSA's tip credit but failed to provide Plaintiffs, Fortner, McManus, and all other Bartenders with requisite verbal or written notice of the tip credit required under federal law.

99.    Plaintiffs, Fortner and McManus, and the putative collective of Bartenders are therefore entitled to receive the full federal minimum wage at the rate of $7.25 per hour for every hour of work within the previous three (3) years.

100.    Plaintiffs, Fortner and McManus, and the proposed Bartender Collective members were subjected to similar violations of federal law as a result of the Defendants claiming a tip credit without providing Bartenders sufficient notice of the tip credit under federal law.

101.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs, Fortner and McManus, seek to recover federal minimum wages for themselves and the following similarly situated Bartender Tip Credit Notice Collective:

> **Bartender Tip Credit Notice Collective: All Bartenders who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage.**

102.    Defendants willfully failed to pay Plaintiffs, Fortner and McManus, and the putative Bartender Tip Credit Notice Collective members the full federal minimum wage for one or more weeks of work.

103.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, and the Bartender Tip Credit Notice Collective members have been damaged in the loss of federal minimum wages for one or more weeks of work during their employment with Defendants.

104.    Defendants have been in operation for several years and therefore knew or should have known about the FLSA's tip credit notice requirement.

105.    Defendants also knew or should have known about the FLSA's prohibition against taking a tip credit without complying with the FLSA's tip credit notice requirement.

106.    The Defendants had an obligation to investigate and review its restaurant's policies concerning compliance with rules and regulations concerning the tip credit notice requirement's effect on payment of employees' wages and tips.

107.    Information concerning the applicability of these rules and regulations were publicly available to Defendants for no charge through the Department of Labor's website.

108.    Moreover, members of the Bartender Tip Credit Notice Collective brought the regulations to Defendants' attention, but Defendants ignored the Bartender Tip Credit Notice Collective member's complaints.

109.    Defendants either willfully chose not to comply with the FLSA, and deliberately failed to pay the Bartender Tip Credit Notice Collective properly or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for its obligations under the FLSA.

110.    Defendants knew Plaintiffs, Fortner and McManus, had performed work but willfully failed to pay Plaintiffs, Fortner and McManus, the full federal minimum wage, contrary to the FLSA.

111.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, have been damaged in the loss of federal minimum wages for one or more weeks of work during their employment with Defendants.

112.    Defendants' willful and/or intentional violations of law entitle Plaintiffs, Fortner and McManus, to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiffs, WILLIAM FORTNER, and AUTUMN MCMANUS, respectfully request that this Honorable Court enter judgment in their favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiffs, Fortner and McManus, and all others similarly situated: (a) unpaid federal minimum wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully claimed by Defendants to be paid by Defendants jointly and severally; (c) liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT II - COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (On Behalf of McManus and the Server Tip Credit Notice Collective)

113.    Plaintiff, McManus, hereby re-alleges and re-avers Paragraphs 1 through 94 as though set forth fully herein.

114.    Plaintiff, McManus, and all other similarly situated Servers are/were entitled to be paid the full federal minimum wage in one or more workweeks for certain hours worked during their employment with Defendants.

115.    Defendants claimed a tip credit under federal law for each hour of work Plaintiff, McManus, and all other Servers performed during all times material hereto.

116.    Defendants attempted to rely on the FLSA's tip credit but failed to provide Plaintiff, McManus, and all other Servers with requisite verbal or written notice of the tip credit required under federal law.

117.    Plaintiff, McManus, and the putative collective of Servers are therefore entitled to receive the full federal minimum wage at the rate of $7.25 per hour for every hour of work within the previous three (3) years.

118.    Plaintiff, McManus, and the proposed collective members were subjected to similar violations of federal law as a result of the Defendant claiming a tip credit without providing Servers sufficient notice of the tip credit under federal law.

119.    Pursuant to 29 U.S.C. § 216(b), Plaintiff, McManus, seeks to recover federal minimum wages for herself and the following similarly situated Server Tip Credit Notice Collective:

> **Server Tip Credit Notice Collective: All Servers who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage.**

120.    Defendants willfully failed to pay Plaintiff, McManus, and the putative collective members the full federal minimum wage for one or more weeks of work.

121.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, McManus, and the Server Tip Credit Notice Collective members have been damaged in the loss of federal minimum wages for one or more weeks of work during their employment with Defendants.

122.    Defendants have been in operation for several years and therefore knew or should have known about the FLSA's tip credit notice requirement.

123.    Defendants also knew or should have known about the FLSA's prohibition against taking a tip credit without complying with the FLSA's tip credit notice requirement.

124.    The Defendants had an obligation to investigate and review its restaurant's policies concerning compliance with rules and regulations concerning the tip credit notice requirement's effect on payment of employees' wages and tips.

125.    Information concerning the applicability of these rules and regulations were publicly available to Defendants for no charge through the Department of Labor's website.

126.    Moreover, members of the Server Tip Credit Notice Collective brought the regulations to Defendants' attention, but Defendants ignored the Server Tip Credit Notice Collective member's complaints.

127.    Defendants either willfully chose not to comply with the FLSA, and deliberately failed to pay the Server Tip Credit Notice Collective properly or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for its obligations under the FLSA.

128.    Defendants knew Plaintiff, McManus, had performed work but willfully failed to pay Plaintiffs, McManus, the full federal minimum wage, contrary to the FLSA.

129.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, McManus, has been damaged in the loss of federal minimum wages for one or more weeks of work during her employment with Defendants.

130.    Defendants' willful and/or intentional violations of law entitle Plaintiff, McManus, to an additional amount of liquidated, or double, damages

WHEREFORE, Plaintiff, AUTUMN MCMANUS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, 21 MAIN NORTH BEACH,

LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, award Plaintiff, McManus, and all others similarly situated: (a) unpaid federal minimum wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully claimed by Defendants to be paid by Defendants jointly and severally; (c) liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

<u>**COUNT III – FEDERAL MINIMUM WAGE VIOLATIONS**</u>
**(On Behalf of Fortner, McManus, and the Bartender Tip Share Collective)**

131.    Plaintiffs, Fortner and McManus, re-allege and re-aver Paragraphs 1 through 94 as though fully set forth herein.

132.    Plaintiffs, Fortner and McManus, and all other similarly situated Bartenders are/were entitled to be paid the full federal minimum wage for certain hours worked during their employment with Defendants.

133.    As a result of the illegal tip sharing and surrendering policies Defendants enforced during the relevant time period, Defendants are not permitted to rely on any tip credit under the FLSA and must pay Plaintiffs, Fortner and McManus, and similarly situated Bartenders the full federal minimum wage of $7.25 per hour for every hour worked by a Bartender during the past 3 years.

134.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs, Fortner and McManus, seek to recover federal minimum wages for themselves, and the following similarly situated Bartender Tip Share Collective:

> **Bartender Tip Share Collective: All Bartenders who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina, during the previous three (3) years who were required to surrender portions of their tips to**

> **cover cash register shortages or share any portions of their tips
> with supervisors and/or managers.**

135.    Defendants have been in operation for several years and therefore knew or should have known that requiring its Bartenders to surrender tips to cover cash register shortages and/or share tips with supervisors and managers was illegal and would cause an FLSA minimum wage and tip violation.

136.    The Defendants had an obligation to investigate and review its policies concerning compliance with rules and regulations concerning the legality of its tip sharing practices and policies.

137.    Information concerning the applicability of these rules and regulations was publicly available to Defendants for no charge through the Department of Labor's website.

138.    Defendants either willfully chose not to comply with the tip sharing regulations under the FLSA, and deliberately failed to pay the Bartender Tip Share Collective properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for, the pertinent tip sharing regulations under the FLSA.

139.    Defendants knew Plaintiffs, Fortner and McManus, had surrendered portions of their tips to supervisors and managers, but Defendants willfully failed to pay Plaintiffs, Fortner and McManus, the full federal minimum wage, contrary to the FLSA.

140.    Defendants' willful and/or intentional violations of the FLSA entitle Plaintiffs, Fortner and McManus, and the putative collective members to an additional amount of liquidated, or double, damages.

141.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, and the collective members have been damaged in the loss of federal minimum wages for one or more weeks of work.

WHEREFORE, Plaintiffs, WILLIAM FORTNER, and AUTUMN MCMANUS, respectfully request that this Honorable Court enter judgment in their favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiffs, Fortner and McManus, and all others similarly situated: (a) unpaid federal minimum wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully taken by Defendants to be paid by Defendants jointly and severally; (c) an equal amount of liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as the Court deems just and reasonable under the circumstance.

### COUNT IV – FEDERAL MINIMUM WAGE VIOLATIONS
### (On Behalf of McManus and the Server Tip Share Collective)

142.    Plaintiff re-alleges and re-avers Paragraphs 1 through 94 as though fully set forth herein.

143.    Plaintiff, McManus, and all other similarly situated Servers are/were entitled to be paid the full federal minimum wage for certain hours worked during their employment with Defendants.

144.    As a result of the illegal tip sharing and surrendering policies Defendants enforced during the relevant time period, the Defendants are not permitted to rely on any tip credit under the FLSA and must pay Plaintiff, McManus, and similarly situated Servers the full federal minimum wage of $7.25 per hour for every hour worked by a Server during the past 3 years.

145.    Pursuant to 29 U.S.C. § 216(b), Plaintiff, McManus, seeks to recover federal minimum wages for herself, and the following similarly situated Server Tip Share Collective:

> **Server Tip Share Collective**: **All Servers who worked for Defendants at any dining venue owned and/or operated at North Beach Resort in South Carolina, during the previous three (3) years who were required to surrender portions of their tips to cover cash register shortages or share any portions of their tips with supervisors and/or managers.**

146.    Defendants have been in operation for several years and therefore knew or should have known that requiring its Servers to surrender tips to cover cash register shortages and/or share tips with supervisors and managers was illegal and would cause an FLSA minimum wage and tip violation.

147.    The Defendants had an obligation to investigate and review its policies concerning compliance with rules and regulations concerning the legality of its tip sharing practices and policies.

148.    Information concerning the applicability of these rules and regulations was publicly available to Defendants for no charge through the Department of Labor's website.

149.    Defendants either willfully chose not to comply with the tip sharing regulations under the FLSA, and deliberately failed to pay the Server Tip Share Collective properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for, the pertinent tip sharing regulations under the FLSA.

150.    Defendants knew Plaintiff, McManus, had surrendered portions of their tips to supervisors and managers, but Defendants willfully failed to pay Plaintiff, McManus, the full federal minimum wage, contrary to the FLSA.

151.    Defendants' willful and/or intentional violations of the FLSA entitle Plaintiff, McManus, and the putative collective members to an additional amount of liquidated, or double, damages.

152.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, McManus, and the collective members have been damaged in the loss of federal minimum wages for one or more weeks of work.

WHEREFORE, Plaintiff, AUTUMN MCMANUS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiff, McManus, and all others similarly situated: (a) unpaid federal minimum wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully taken by Defendants to be paid by Defendants jointly and severally; (c) an equal amount of liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as the Court deems just and reasonable under the circumstance.

## COUNT V - FEDERAL OVERTIME WAGE VIOLATIONS
**(On Behalf of Fortner, McManus, and the Bartender Tip Credit Notice Overtime Collective)**

153.    Plaintiffs, Fortner and McManus, hereby re-alleges and re-avers Paragraphs 1 through 94 as though set forth fully herein.

154.    Plaintiffs, Fortner and McManus, and all other similarly situated Bartenders are/were entitled to be paid the full federal overtime wages in one or more workweeks when they worked more than 40 hours in a workweek during their employment with Defendants because Defendants improperly took a tip credit toward the federal overtime wage obligations.

155.     Defendants' overtime pay policy at issue in this case violated the FLSA because it failed to properly compensate Bartenders overtime wages in light of the improper tip credit the Defendants took toward federal overtime wages.

156.     When Bartenders worked over 40 hours in a workweek, the Defendants took a $2.75 tip credit toward the overtime premium owed to Bartenders.

157.     As a result of the illegal overtime policy enforced at North Beach Resort, Defendants must pay Plaintiffs, Fortner and McManus, and similarly situated Bartenders the full amount of overtime wages they earned when working over 40 hours in a workweek, or, reimburse the Bartenders the tip credit that was taken for every single hour of overtime worked within the past 3 years.

158.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs, Fortner and McManus, seek to recover federal overtime wages for themselves and the following similarly situated Bartender Tip Credit Notice Overtime Collective:

> **Bartender Tip Credit Notice Overtime Collective: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek.**

159.     Defendants willfully failed to pay Plaintiffs, Fortner and McManus, and the putative Bartender Tip Credit Notice Overtime Collective members the full federal overtime wage for one or more weeks of work.

160.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, and the Bartender Tip Credit Notice Overtime Collective members have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

161.     Defendants have been in operation for several years and therefore knew or should have known about the FLSA's prohibition against taking a tip credit toward federal overtime wages if the tip credit notice requirements under the FLSA are not satisfied.

162.     Defendants also knew Plaintiffs, Fortner and McManus, had performed more than 40 hours of work in one or more workweeks, but willfully failed to pay Plaintiffs, Fortner and McManus, the full federal overtime wage, contrary to the FLSA.

163.     The Defendants had an obligation to investigate and review their policies concerning compliance with rules and regulations concerning the overtime rates owed to Bartenders.

164.     Information concerning the applicability of these rules and regulations were publicly available to Defendants for no charge through the Department of Labor's website.

165.     Defendants either willfully chose not to comply with the FLSA, and deliberately failed to pay the Bartender Tip Credit Notice Overtime Collective properly or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for its obligations under the FLSA.

166.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

167.     Defendants' willful and/or intentional violations of law entitle Plaintiffs, Fortner and McManus, to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiffs, WILLIAM FORTNER, and AUTUMN MCMANUS, respectfully request that this Honorable Court enter judgment in their favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK,

LLC, and award Plaintiffs and all others similarly situated: (a) unpaid federal overtime wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully claimed by Defendants to be paid by Defendants jointly and severally; (c) liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT VI - FEDERAL OVERTIME WAGE VIOLATIONS
### (On Behalf of McManus, and the Server Tip Credit Notice Overtime Collective)

168.    Plaintiff, McManus, hereby re-alleges and re-avers Paragraphs 1 through 94 as though set forth fully herein.

169.    Plaintiff, McManus, and all other similarly situated Servers are/were entitled to be paid the full federal overtime wages in one or more workweeks when they worked more than 40 hours in a workweek during their employment with Defendants because Defendants improperly took a tip credit toward the federal overtime wage obligations.

170.    Defendants' overtime pay policy at issue in this case violated the FLSA because it failed to properly compensate Servers overtime wages in light of the improper tip credit they took toward federal overtime wages.

171.    When Servers worked over 40 hours in a workweek, the Defendants took a $5.12 tip credit toward the overtime premium owed.

172.    As a result of the illegal overtime policy enforced at North Beach Resort the Defendants must pay Plaintiff, McManus, and similarly situated Servers the full amount of overtime wages they earned when working over 40 hours in a workweek, or, reimburse the Servers the tip credit that was taken for every single hour of overtime worked within the past 3 years.

173.    Pursuant to 29 U.S.C. § 216(b), Plaintiff, McManus, seeks to recover federal overtime wages for herself and the following similarly situated Server Tip Credit Notice Overtime Collective:

> **Server Tip Credit Notice Overtime Collective: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek.**

174.    Defendants willfully failed to pay Plaintiff, McManus, and the putative Server Tip Credit Notice Overtime Collective members the full federal overtime wage for one or more weeks of work.

175.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, McManus, and the Server Tip Credit Notice Overtime Collective members have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

176.    Defendants have been in operation for several years and therefore knew or should have known about the FLSA's prohibition against taking a tip credit toward federal overtime wages if the tip credit notice requirements under the FLSA are not satisfied.

177.    Defendants also knew Plaintiff, McManus, had performed more than 40 hours of work in one or more workweeks, but willfully failed to pay Plaintiff, McManus, the full federal overtime wage, contrary to the FLSA.

178.    The Defendants had an obligation to investigate and review their policies concerning compliance with rules and regulations concerning the overtime rates owed to Servers.

179.    Information concerning the applicability of these rules and regulations were publicly available to Defendants for no charge through the Department of Labor's website.

180.    Defendants either willfully chose not to comply with the FLSA, and deliberately failed to pay the Server Tip Credit Notice Overtime Collective properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for its obligations under the FLSA.

181.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

182.    Defendants' willful and/or intentional violations of law entitle Plaintiff, McManus, to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, AUTUMN MCMANUS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiffs and all others similarly situated: (a) unpaid federal overtime wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully claimed by Defendants to be paid by Defendants jointly and severally; (c) liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT VII – FEDERAL OVERTIME WAGE VIOLATIONS
### (On Behalf of Fortner, McManus, and the Bartender Multiple Rate Overtime Collective)

183.    Plaintiffs, Fortner and McManus, hereby re-allege and re-aver Paragraphs 1 through 94 as though set forth fully herein.

184.    Plaintiffs, Fortner and McManus, and all other similarly situated Bartenders are/were entitled to be paid the full federal overtime wages in one or more workweeks when they

worked more than 40 hours in a workweek during their employment with Defendants and were paid at more than one hourly rate.

185.    Even if Defendants are permitted to take a tip credit toward their overtime obligation (which they are not), the Defendants' overtime pay policy at issue in this case nevertheless violated the FLSA because it failed to compute the weighted average of the hourly rates before paying the overtime premium in weeks where Bartenders worked more than 40 hours and were paid at more than one hourly rate.

186.    When Defendants required Bartenders to work shifts at North Beach Pizza Co., they paid the Bartenders $10.00 per hour – an hourly rate that is different from the $4.50 paid per hour when the Bartenders worked at Cabana Club Pool Side Bar & Grill and/or 21 Main Steakhouse.

187.    For example, during the workweek of May 29, 2023, through June 4, 2023, Plaintiff, Fortner, worked 37.67 hours at the rate of $4.50 per hour, and 2.33 hours at the rate of $10.00 per hour. In addition to these regular hours, Plaintiff, Fortner, worked 0.47 hours of overtime and was paid at the rate of $8.12 per hour for the overtime work.[5] These rates and hourly figures are reflected on Plaintiff, Fortner's paystub below:

---

[5] Defendants reached the $8.12 overtime rate by taking 1.5 x the applicable federal minimum wage of $7.25 minus the $2.75 tip credit the Defendants were attempting to take for Plaintiff, Fortner. This calculation would have been proper if the Defendants were entitled to take a tip credit and if Defendants were only paying Plaintiff, Fortner, at one hourly rate during the workweek. However, Defendants cannot rely on the tip credit and neglected to factor in the $10.00 rate they were paying to Plaintiff, Fortner, for part of the week. This is only one example of these violations, but Defendants committed these violations in several workweeks against Plaintiff, Fortner, and the putative collective.

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 040 |
|---|---|---|---|---|---|
| ZV2 | 201018 | 022312 | XN50X | 0000230042 | 1 |

## Earnings Statement



21 MAIN NORTH BEACH LLC
3880 VETERANS MEMORIAL HW STE 101
BOHEMIA, NY 11716

Period Beginning:    05/29/2023
Period Ending:    06/04/2023
Pay Date:    06/09/2023

Taxable Marital Status:    Married
Exemptions/Allowances:
Federal:    4
SC:    4

**WILLIAM E FORTNER**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5000 | 37.67 | 169.52 | 1,386.13 |
| Regular | 10.0000 | 2.33 | 23.30 | |
| Overtime | 8.1276 | .47 | 3.82 | 25.52 |
| Tips | | | 792.89 | |
| **Gross Pay** | | | **$989.53** | 7,946.88 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Totl Hrs Worked | 40.47 | |

**Important Notes**
COMPANY PH#: 631-244-7130

BASIS OF PAY: HOURLY

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | -37.42 | 222.69 |
| | Social Security Tax | -61.35 | 492.71 |
| | Medicare Tax | -14.35 | 115.23 |
| | SC State Income Tax | -23.18 | 144.34 |
| | **Other** | | |
| | Tip Credit | -98.47* | 775.38 |
| | Tips | -792.89 | 6,535.23 |
| | Tip Credit | | -775.38 |
| | **Adjustment** | | |
| | Charge Tip | +753.95 | |
| | Tip Credit | +98.47 | |
| | **Net Pay** | **$814.29** | |
| | Checking1 | -814.29 | |
| | **Net Check** | **$0.00** | |

\* **Excluded from federal taxable wages**
Your federal taxable wages this period are $989.53

© 2000 ADP, Inc.

188.    Meanwhile, Plaintiff, McManus, experienced the exact same federal overtime violations. During the workweek of August 28, 2023, through September 3, 2023, Plaintiff, McManus, worked 37.37 hours at the rate of $4.50 per hour, and 2.63 hours at the rate of $10.00 per hour. In addition to these regular hours, Plaintiff, McManus, worked 4.87 hours of overtime

and was paid at the rate of $8.12 per hour for the overtime work.[6] These rates and hourly figures are reflected on Plaintiff, McManus' paystub below:



---

[6] Once again, as demonstrated by its systematic and universally enforced policy, Defendants reached the $8.12 overtime rate by taking 1.5 x the applicable federal minimum wage of $7.25 minus the $2.75 tip credit the Defendants were attempting to take for Plaintiff, McManus – just as they did for Plaintiff, Fortner. This calculation would have been proper if Defendants were entitled to take a tip credit and if Defendants were only paying Plaintiff, McManus, at one hourly rate during the workweek. However, Defendants cannot rely on the tip credit and neglected to factor in the $10.00 rate they were paying to Plaintiff, McManus, for part of the week. This is only one example of these violations, but Defendants committed these violations in several workweeks against Plaintiff, Fortner, and the putative collective.

189.    Defendants' overtime pay policy at issue in this case violated the FLSA because it failed to compute the weighted average of the hourly rates before paying the overtime premium in weeks where Bartenders worked more than 40 hours and were paid at more than one hourly rate.

190.    As a result of the illegal overtime policy enforced at North Beach Resort the Defendants must pay Plaintiffs, Fortner and McManus, and similarly situated Bartenders the full amount of overtime wages they earned when working over 40 hours in a workweek where they were compensated at more than one hourly rate.

191.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs, Fortner and McManus, seek to recover federal overtime wages for themselves and the following similarly situated Bartender Multiple Rate Overtime Collective:

> **Bartender Multiple Rate Overtime Collective: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek where they were paid more than one hourly rate.**

192.    Defendants willfully failed to pay Plaintiffs, Fortner and McManus, and the putative Bartender Multiple Rate Overtime Collective members the full federal overtime wages for one or more weeks of work.

193.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, and the Bartender Multiple rate Overtime Collective members have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

194.    Defendants have been in operation for several years and therefore knew or should have known about the FLSA's requirement to pay Bartenders the proper overtime wages when employees are paid at more than hourly rate in a workweek.

195.    Defendants also knew Plaintiffs, Fortner and McManus, had performed more than forty (40) hours of work in a workweek in which he was paid more than one hourly rate, but willfully failed to pay Plaintiffs, Fortner and McManus, the full federal overtime wage, contrary to the FLSA.

196.    The Defendants had an obligation to investigate and review its restaurant's policies concerning compliance with rules and regulations concerning the effect multiple regular hourly rates have on an employee's overtime wages.

197.    Information concerning the applicability of these rules and regulations were publicly available to Defendants for no charge through the Department of Labor's website.

198.    Moreover, members of the Bartender Multiple Rate Overtime Collective brought the regulations to Defendants' attention, but Defendants ignored the Bartender Multiple Rate Overtime Collective member's complaints.

199.    Defendants either willfully chose not to comply with the FLSA, and deliberately failed to pay the Bartender Multiple Rate Overtime Collective properly or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for its obligations under the FLSA.

200.    Defendants knew Plaintiffs, Fortner and McManus, had performed work but willfully failed to pay Plaintiffs, Fortner and McManus, the full federal overtime wage owed, contrary to the FLSA.

201.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, Fortner and McManus, have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

202.    Defendants' willful and/or intentional violations of law entitle Plaintiffs, Fortner and McManus, to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiffs, WILLIAM FORTNER, and AUTUMN MCMANUS, respectfully request that this Honorable Court enter judgment in their favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiffs, Fortner and McManus, and all others similarly situated: (a) unpaid federal overtime wages to be paid by Defendants jointly and severally; (b) liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT VIII – FEDERAL OVERTIME WAGE VIOLATIONS
### (On Behalf of McManus, and the Server Multiple Rate Overtime Collective)

203.    Plaintiff, McManus, hereby re-alleges and re-avers Paragraphs 1 through 94 as though set forth fully herein.

204.    Plaintiff, McManus, and all other similarly situated Servers are/were entitled to be paid the full federal overtime wages in one or more workweeks when they worked more than 40 hours in a workweek during their employment with Defendants and were paid at more than one hourly rate.

205.    Even if Defendants are permitted to take a tip credit toward their overtime obligation (which they are not), the Defendants' overtime pay policy at issue in this case violated the FLSA because it failed to compute the weighted average of the hourly rates before paying the

overtime premium in weeks where Servers worked more than 40 hours and were paid at more than one hourly rate.

206.    When Defendants required Servers to work shifts at 21 Main Steakhouse, they paid the Servers $2.13 per hour – an hourly rate that is different from the $12.00 paid per hour when the Servers worked at 21 Main Events.

207.    For example, during the workweek of April 11, 2022, through April 17, 2022, Plaintiff, McManus worked 27.52 hours as a Server at the rate of $2.13 per hour, and 12.48 hours as an assistant manager at the rate of $22.00 per hour. In addition to these regular hours, Plaintiff, McManus, worked 13.27 hours of overtime and was paid at the rate of $5.7550 per hour for the overtime work.[7] These rates and hourly figures are reflected on Plaintiff, McManus' paystub below:

208.    Defendants' overtime pay policy at issue in this case violated the FLSA because it failed to compute the weighted average of the hourly rates before paying the overtime premium in weeks where Bartenders and Servers worked more than 40 hours and were paid at more than one hourly rate.

209.    As a result of the illegal overtime policy enforced at North Beach Resort the Defendants must pay Plaintiff, McManus, and similarly situated Servers the full amount of

---

[7] Defendants reached the $5.7550 overtime rate by taking 1.5 x the applicable federal minimum wage of $7.25 minus the $5.12 tip credit the Defendants were attempting to take for Plaintiff, McManus. This calculation would have been proper if Defendants were entitled to take a tip credit and if Defendants were only paying Plaintiff, McManus, at one hourly rate during the workweek. However, Defendants cannot rely on the tip credit and neglected to factor in the $22.00 rate they were paying to Plaintiff, McManus, for part of the week. This is only one example of these violations, but Defendants committed these violations in several workweeks against Plaintiff, McManus, and the putative collective.

overtime wages they earned when working over 40 hours in a workweek where they were compensated at more than one hourly rate.

210.    Pursuant to 29 U.S.C. § 216(b), Plaintiff, McManus, seeks to recover federal overtime wages for herself and the following similarly situated Server Multiple Rate Overtime Collective:

> **Server Multiple Rate Overtime Collective: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who worked more than 40 hours in any workweek where they were paid more than one hourly rate.**

211.    Defendants willfully failed to pay Plaintiff, McManus, and the putative Server Multiple Rate Overtime Collective members the full federal overtime wage for one or more weeks of work.

212.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, McManus, and the Server Multiple Rate Overtime Collective members have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendants.

213.    Defendants have been in operation for several years and therefore knew or should have known about the FLSA's requirement to pay Servers the proper overtime wages when employees are paid at more than hourly rate in a workweek.

214.    Defendants also knew Plaintiff, McManus, had performed more than forty (40) hours of work in a workweek during which she was paid more than one hourly rate, but willfully failed to pay Plaintiff, McManus, the proper overtime wage, contrary to the FLSA.

215.    The Defendants had an obligation to investigate and review its restaurant's policies concerning compliance with rules and regulations concerning the effect multiple regular hourly rates have on an employee's overtime wages.

216.    Information concerning the applicability of these rules and regulations were publicly available to Defendants for no charge through the Department of Labor's website.

217.    Moreover, members of the Server Multiple Rate Overtime Collective brought the regulations to Defendants' attention, but Defendants ignored the Server Multiple Rate Overtime Collective member's complaints.

218.    Defendants either willfully chose not to comply with the FLSA, and deliberately failed to pay the Server Multiple Rate Overtime Collective properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA. As a result, Defendants either knew, or showed reckless disregard for its obligations under the FLSA.

219.    Defendants knew Plaintiff, McManus, had performed work but willfully failed to pay Plaintiff, McManus, the full federal overtime wage owed, contrary to the FLSA.

220.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, McManus, has been damaged in the loss of federal overtime wages for one or more weeks of work during her employment with Defendants.

221.    Defendants' willful and/or intentional violations of law entitles Plaintiff, McManus, to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, AUTUMN MCMANUS, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiff, McManus, and all others similarly situated: (a) unpaid federal overtime wages to be paid by Defendants jointly

and severally; (b) liquidated damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

<u>**COUNT IX - FED. R. CIV. P. 23 CLASS ACTION FOR VIOLATION OF**</u>
<u>**SOUTH CAROLINA PAYMENT OF WAGES ACT ("SCPWA")**</u>
**(On Behalf of Fortner, McManus, and the Bartender Class)**

222.    Plaintiff, Fortner, re-alleges and re-avers Paragraphs 1 through 94 as though fully set forth herein.

223.    The South Carolina Payment of Wages Act ("SCPWA") was drafted to protect the interests of employees and is remedial legislation designed to protect working people and assist them in collection compensation wrongfully withheld. *Weaver v. John Lucas Tree Expert Co.,* 2013 WL 5587854 at *9 (D.S.C. 2013) ("The South Carolina Supreme Court has noted on multiple occasions that 'the purpose of the [SCPWA] is 'to protect employees from the unjustified and willful retention of wages by the employer.'"").

224.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs, Fortner and McManus, and each member of the SCPWA Bartender Class within the meaning of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 ("SCWPA").

225.    Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class are "employees" pursuant to the SCWPA.

226.    Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class worked for the Defendants with the clear understanding and agreement by Defendants that their compensation would be consistent with all applicable laws, including federal and state wage and hour laws.

227.    Pursuant to the SCPWA, "[a]n employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal

law…" Accordingly, Plaintiff, Fortner, and the SCPWA Bartender Class were entitled to receive all compensation due and owing to them.

228.    Under South Carolina law, tips constitute wages and an employer's enforcement of an unlawful tip pool constitutes a violation of the South Carolina Payment of Wages Act. *See Degidio v. Crazy Horse Saloon and Rest., Inc.,* 190 F.Supp.3d 499 (D.S.C. 2016) *citing Foster v. M5 Hosp. Grp., LLC,* 2015 WL 5024404 at *5 (D.S.C. 2015); *Spallone v. SOHO Univ., Inc.,* 2015 WL 5098154 at *5 (D.S.C. 2015); *Gardner v. Country Club, Inc.,* 190 F.Supp.3d 504 (D.S.C. 2016).

229.    As a result of the Defendants' unlawful policies and practices alleged in this lawsuit, Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class have been deprived of compensation due and owing, which Defendants promised to pay in its commitment to abide by applicable wage and hour laws, and in violation of the SCPWA's mandate that no wages be withheld or diverted unless required or permitted under applicable law.

230.    Moreover, Defendants violated the recordkeeping requirements under South Carolina law as they failed to provide written notice to Plaintiff, Fortner, and the SCPWA Bartender Class at the time of hiring of the normal hours of work and wages agreed upon.

231.    Defendants further failed to provide written notification to Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class of the amount and terms of the tip deductions Defendants made during the relevant time period.

232.    Due to Defendants' policy of requiring Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class to share portions of their tips with supervisors and managers, Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class were subject to improper deductions from their compensation. Specifically, Defendants unlawfully withheld and diverted money from the

compensation earned by Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class in order to subsidize the salaries of supervisors and managers, in direct violation of the SCPWA.

233.    Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class have not expressly and freely given written consent to such deductions, and these deductions were not made in response to a valid wage assignment or deduction order. Such deductions were not for the Plaintiffs, Fortner and McManus, and SCPWA Bartender Class' benefit.

234.    Defendants have reduced, withheld, and/or diverted the wages of Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class absent any lawfully sufficient reason for such conduct.

235.    As a direct and proximate result of Defendants' conduct, Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class have suffered substantial losses and have been deprived of compensation to which they are entitled, including monetary damages in the amount of three times the unpaid wages, plus costs and reasonable attorney's fees.

CLASS ACTION ALLEGATIONS

236.    **Numerosity**: On information and belief, the members the class are so numerous that joinder of all members is impracticable. While the exact number of the members of the class is unknown at this time, and can only be ascertained through fulsome discovery, Plaintiffs, Fortner and McManus, believe there are over 50 individuals in the Bartender Class.

237.    **Typicality**: The claims of Plaintiffs are typical of the claim of the SCPWA Bartender Class they seek to represent. Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class work or have worked for Defendants as Bartenders and were subject to the same compensation policies and practices, including not being compensated for all hours worked during the relevant time period.

238.    **Commonality**: All Bartender Class members were subject to the same corporate practices and Defendants, as alleged herein, of failing to compensation, and illegal retention of tips. These corporate-wide policies and practices affected all Bartender Class members similarly, and Defendants benefited from the same type of unfair and/or illegal acts as to each Bartender Class member. Common questions of law and fact exist as to the Bartender Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    Whether Defendants failed to pay minimum wages for each hour worked;

(b)    Whether Defendants required Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class to share tips with supervisors and/or managers;

(c)    Whether Defendants required Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class to surrender tips to cover cash register shortages;

(d)    Whether Defendants provided proper tip credit notice to Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class;

(e)    Whether Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class are entitled to compensatory damages, and if so, the means of measuring such damages; and

(f)    Whether Defendants are liable for attorney's fees and costs.

239.    **Adequacy**: Plaintiffs, Fortner and McManus, will fairly and adequately protect the interests of the Bartender Class as their interests are aligned with those of the members of the SCPWA Bartender Class. Plaintiffs, Fortner and McManus, have no interests adverse to the Bartender Class they seek to represent, and they have retained competent counsel experienced in wage and hour class action litigation.

240.    **Superiority**: The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Bartender Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Bartender Class to individually seek redress for the wrongs done to them.

241.    Plaintiff, Fortner, and the SCPWA Bartender Class have suffered and will continue to suffer irreparable damages from Defendants' illegal pay practices.

242.    Plaintiffs, Fortner and McManus, seek to represent the following SCPWA Bartender Class:

> **Bartender Class: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage who do not affirmatively opt-out.**

243.    Defendants have acted willfully and have engaged in a continuing pattern of violations of the South Carolina wage and hour laws.

244.    Plaintiffs, Fortner and McManus, and the SCPWA Bartender Class seek recovery of wages owed during the 3 years preceding the filing of this action.

WHEREFORE, Plaintiffs, WILLIAM FORTNER, and AUTUMN MCMANUS, respectfully request that this Honorable Court enter judgment in their favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiffs, Fortner and McManus, and all others similarly situated: (a) unpaid minimum wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully taken by Defendants to be paid by Defendants jointly and severally; (c) treble damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs permitted

under the South Carolina Wage Payment Act to be paid by Defendants jointly and severally; and

any and all such further relief as the Court deems just and reasonable under the circumstances.

<u>**COUNT X - FED. R. CIV. P. 23 CLASS ACTION FOR VIOLATION OF**
**SOUTH CAROLINA PAYMENT OF WAGES ACT ("SCPWA")**</u>
**(On Behalf of McManus and the Server Class)**

245.    Plaintiff, McManus, re-alleges and re-avers Paragraphs 1 through 94 as though fully

set forth herein.

246.    The South Carolina Payment of Wages Act ("SCPWA") was drafted to protect the

interests of employees and is remedial legislation designed to protect working people and assist

them in collection compensation wrongfully withheld. *Weaver v. John Lucas Tree Expert Co.,* 2013

WL 5587854 at *9 (D.S.C. 2013) ("The South Carolina Supreme Court has noted on multiple

occasions that 'the purpose of the [SCPWA] is 'to protect employees from the unjustified and

willful retention of wages by the employer.'").

247.    At all relevant times, Defendants have employed, and/or continue to employ,

Plaintiff, McManus, and each member of the SCPWA Server Class within the meaning of the South

Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 ("SCWPA").

248.    Plaintiff, McManus, and the SCPWA Server Class are "employees" pursuant to the

SCWPA.

249.    Plaintiff, McManus, and the SCPWA Server Class worked for the Defendants with

the clear understanding and agreement by Defendants that their compensation would be consistent

with all applicable laws, including federal and state wage and hour laws.

250.    Pursuant to the SCPWA, "[a]n employer shall not withhold or divert any portion of

an employee's wages unless the employer is required or permitted to do so by state or federal

law…" Accordingly, Plaintiff and the SCPWA Class were entitled to receive all compensation due

and owing to them.

251.    Under South Carolina law, tips constitute wages and an employer's enforcement of an unlawful tip pool constitutes a violation of the South Carolina Payment of Wages Act. *See Degidio v. Crazy Horse Saloon and Rest., Inc.,* 190 F.Supp.3d 499 (D.S.C. 2016) *citing Foster v. M5 Hosp. Grp., LLC,* 2015 WL 5024404 at *5 (D.S.C. 2015); *Spallone v. SOHO Univ., Inc.,* 2015 WL 5098154 at *5 (D.S.C. 2015); *Gardner v. Country Club, Inc.,* 190 F.Supp.3d 504 (D.S.C. 2016).

252.    As a result of the Defendants' unlawful policies and practices alleged in this lawsuit, Plaintiff, McManus, and the SCPWA Server Class have been deprived of compensation due and owing, which Defendants promised to pay in its commitment to abide by applicable wage and hour laws, and in violation of the SCPWA's mandate that no wages be withheld or diverted unless required or permitted under applicable law.

253.    Moreover, Defendants violated the recordkeeping requirements under South Carolina law as they failed to provide written notice to Plaintiff, McManus, and the SCPWA Class at the time of hiring of the normal hours of work and wages agreed upon.

254.    Defendants further failed to provide written notification to Plaintiff, McManus, and the SCPWA Class of the amount and terms of the tip deductions Defendants made during the relevant time period.

255.    Due to Defendants' policy of requiring Plaintiff, McManus, and the SCPWA Class to share portions of their tips with supervisors and managers, Plaintiff, McManus, and the SCPWA Class were subject to improper deductions from their compensation. Specifically, Defendants unlawfully withheld and diverted money from the compensation earned by Plaintiff, McManus, and the SCPWA Class in order to subsidize the salaries of supervisors and managers, in direct violation of the SCPWA.

256.    Plaintiff, McManus, and the SCPWA Server Class have not expressly and freely given written consent to such deductions, and these deductions were not made in response to a valid wage assignment or deduction order. Such deductions were not for the Plaintiff, McManus, and SCPWA Server Class' benefit.

257.    Defendants have reduced, withheld, and/or diverted the wages of Plaintiff, McManus, and the SCPWA Server Class absent any lawfully sufficient reason for such conduct.

258.    As a direct and proximate result of Defendants' conduct, Plaintiff, McManus, and the SCPWA Server Class have suffered substantial losses and have been deprived of compensation to which they are entitled, including monetary damages in the amount of three times the unpaid wages, plus costs and reasonable attorney's fees.

## CLASS ACTION ALLEGATIONS

259.    **Numerosity**: On information and belief, the members the class are so numerous that joinder of all members is impracticable. While the exact number of the members of the class is unknown at this time, and can only be ascertained through fulsome discovery, Plaintiff, McManus, believes there are over 50 individuals in the Server Class.

260.    **Typicality**: The claims of Plaintiff, McManus, are typical of the claim of the SCPWA Server Class she seeks to represent. Plaintiff, McManus, and the SCPWA Server Class work or have worked for Defendants as Servers and were subject to the same compensation policies and practices, including not being compensated for all hours worked during the relevant time period.

261.    **Commonality**: All Server Class members were subject to the same corporate practices and Defendants, as alleged herein, of failing to compensation, and illegal retention of tips. These corporate-wide policies and practices affected all Server Class members similarly, and

Defendants benefited from the same type of unfair and/or illegal acts as to each Server Class member. Common questions of law and fact exist as to the Server Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(g)    Whether Defendants failed to pay minimum wages for each hour worked;

(h)    Whether Defendants required Plaintiff, McManus, and the SCPWA Server Class to share tips with supervisors and/or managers;

(i)    Whether Defendants required Plaintiff, McManus, and the SCPWA Server Class to surrender tips to cover cash register shortages;

(j)    Whether Defendants provided proper tip credit notice to Plaintiff, McManus, and the SCPWA Server Class;

(k)    Whether Plaintiff, McManus, and the SCPWA Server Class are entitled to compensatory damages, and if so, the means of measuring such damages; and

(l)    Whether Defendants are liable for attorney's fees and costs.

262.    **Adequacy**: Plaintiff, McManus, will fairly and adequately protect the interests of the Server Class as his interests are aligned with those of the members of the SCPWA Server Class. Plaintiff, McManus, has no interests adverse to the Server Class she seeks to represent, and he has retained competent counsel experienced in wage and hour class action litigation.

263.    **Superiority**: The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Server Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Server Class to individually seek redress for the wrongs done to them.

264. Plaintiff, McManus, and the SCPWA Server Class have suffered and will continue to suffer irreparable damages from Defendants' illegal pay practices.

265. Plaintiff, McManus, seeks to represent the following SCPWA Server Class:

> **Server Class: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage who do not affirmatively opt-out.**

266. Defendants have acted willfully and have engaged in a continuing pattern of violations of the South Carolina wage and hour laws.

267. Plaintiff, McManus, and the SCPWA Server Class seek recovery of wages owed during the 3 years preceding the filing of this action.

WHEREFORE, Plaintiff, WILLIAM FORTNER, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiff, and all others similarly situated: (a) unpaid minimum wages to be paid by Defendants jointly and severally; (b) the tip credit unlawfully taken by Defendants to be paid by Defendants jointly and severally; (c) treble damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs permitted under the South Carolina Wage Payment Act to be paid by Defendants jointly and severally; and any and all such further relief as the Court deems just and reasonable under the circumstances.

### COUNT XI – FLSA RETALIATION
**(On Behalf of Fortner)**

268. Plaintiff Fortner, re-alleges and re-avers Paragraphs 1 through 94 as though fully set forth herein.

269.    Defendants employed Fortner, from 2018 to July 2023 - a period of approximately 6 years.

270.    Fortner never received any reprimands, suspensions, or other disciplinary action during his employment with Defendants.

271.    During his employment, Fortner submitted multiple verbal complaints to management, including the Food & Beverage Manager, Sami Diab ("Diab"), because Diab regularly enforced a policy of taking tips that Fortner and other Servers and Bartenders earned to cover cash register shortages and distribute amongst managers.

272.    Fortne submitted these complaints to Defendants (through Diab) in good faith and believed that their confiscation of these tips to cover cash register shortages and distribute amongst management was a violation of the FLSA.

273.    On one specific occasion in July 2023, Diab took a large portion of the tips earned by Fortner and other Servers and Bartenders and used this money to cover a cash register shortage at the end of a shift.

274.    After this happened, Fortner specifically notified Diab that he did not believe taking tips that the Servers and Bartenders earned to cover cash register shortages was legal.

275.    Multiple eyewitnesses were present for this exchange between Fortner and Diab.

276.    That same day, Fortner spoke with one of the regular resort guests, Lisa Brown.

277.    Fortner had served Lisa Brown at the Pool Side Bar & Grill on several occasions over the years during his employment with Defendants.

278.    Plaintiff Fortner explained to Lisa Brown that Defendants did not allow the Servers and Bartenders to keep all of the tips they earned.

279.    When closing out her tab at the Pool Side Bar & Grill, Lisa Brown left Fortner a very large tip.

280.    Diab later learned that Fortner had notified Lisa Brown that the Servers and Bartenders do not get to keep all of the tips they earn.

281.    Diab also subsequently learned that Lisa Brown left Fortner a very large tip when she closed out her tab at the Pool Side Bar & Grill after she learned of this.

282.    In direct response to Fortner's verbal complaints he had submitted earlier in the day, Sami Diab terminated Fortner's employment that day.

283.    Fortner's complaint about Defendants' violation of the FLSA was the direct cause of his termination.

284.    The temporal proximity of Fortner's termination in connection to when he submitted these complaints to his manager Sami Diab, creates a presumption that the termination was retaliatory.

285.    Any other justification for Fortner's termination provided by Defendants is mere pretext.

286.    Pursuant to 29 U.S.C. § 215(a)(3), Fortner, is entitled to recover lost back and front wages, damages for pain, suffering, embarrassment, and loss of reputation, and liquidated damages in an amount to be proven at trial.

287.    Following his unlawful termination, Fortner attempted to mitigate his damages.

288.    Defendants have been in operation for several years and therefore knew or should have known that terminating an employee who submits a complaint for violations of the FLSA would constitute unlawful termination under federal law.

289.    The Defendants had an obligation to investigate and review its policies concerning FLSA compliance.

290.    Defendants either willfully chose not to comply with the anti-retaliation provisions under the FLSA, and deliberately terminated Plaintiff because he submitted complaints of violations under the FLSA. As a result, Defendants either knew, or showed reckless disregard for, the pertinent regulations under the FLSA.

291.    Defendants' willful and/or intentional violations of the FLSA entitle Plaintiff, Fortner, to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, WILLIAM FORTNER, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, 21 MAIN NORTH BEACH, LLC, and LOVIN' OVEN CATERING OF SUFFOLK, LLC, and award Plaintiff, and all others similarly situated: (a) lost back wages to be paid by Defendants jointly and severally; (b) lost front wages to be paid by Defendants jointly and severally; (c) compensatory damages to be paid by Defendants jointly and severally; (d) all reasonable attorney's fees and litigation costs permitted under the FLSA to be paid by Defendants jointly and severally; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, WILLIAM FORTNER, and AUTUMN MCMANUS, on behalf of themselves and each collective and class demand a trial by jury on all appropriate claims.

**Date: October 15, 2024.**

Respectfully Submitted,

By: */s/ Christopher C. Mingledorff*
Christopher C. Mingledorff, Esq.
South Carolina Bar No. 100390
S.C. District Court Bar No. 12034

chris@mptrial.com

**MINGLEDORFF & PATTERSON, LLC**
245 Seven Farms Drive, Suite 310, Box 13
Charleston, South Carolina 29492
Ph: (843) 471-1015
*Co-Counsel for Plaintiff and*
*Putative Collective of FLSA*
*Opt-In Plaintiffs and Class*


By: _/s/ Jordan Richards_____
Jordan Richards
Pro Hac Vice Forthcoming
Florida Bar No. 108372
jordan@jordanrichardspllc.com
Michael V. Miller
Pro Hac Vice Forthcoming
Florida Bar No.
michael@usaemploymentlawyers.com
Patrick Solberg
Pro Hac Vice Forthcoming
Illinois Bar No.
patrick@usaemploymentlawyers.com

**USA EMPLOYMENT LAWYERS -**
**JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Co-Counsel for Plaintiff and*
*Putative Collective of FLSA*
*Opt-In Plaintiffs and Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on October 15, 2024.

By: */s/ Christopher C. Mingledorff*
Christopher C. Mingledorff, Esq.
South Carolina Bar No. 100390
S.C. District Court Bar No. 12034

## SERVICE LIST