IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| WILLIAM FORTNER, and AUTUMN McMANUS, individually and on behalf) of themselves and all others similarly) situated, Plaintiffs, ) ) | Case No.: 4:24-cv-05893-JD |
| vs. ) ) | **ORDER** |
| 21 Main North Beach, LLC, and ) Lovin' Oven Catering of Suffolk, LLC, ) ) | |
| Defendants. ) ) | |

   This is a Fair-Labor-Standards-Act dispute. Plaintiffs William Fortner and

Autumn McManus, along with opt-in Plaintiff Allison Jones (collectively,

"Plaintiffs"), have filed a Motion for Conditional Certification of a Collective Action

under 29 U.S.C. § 216(b) (DE 12). Defendants 21 Main North Beach, LLC, and Lovin'

Oven Catering of Suffolk, LLC (collectively, "Defendants"), have filed a Response in

Opposition to the motion (DE 31), and Plaintiffs have submitted a Reply in further

support (DE 34).

   Plaintiffs have also filed a Placeholder Motion for Class Certification under

Federal Rule of Civil Procedure 23 (DE 5), to which Defendants have filed a Response

in Opposition (DE 22).

   After reviewing these materials, and for the reasons below, the Court grants

Plaintiffs' Motion for Conditional Certification of a Collective Action (DE 12) but

denies Plaintiffs' Placeholder Motion for Class Certification (DE 5).

# I. BACKGROUND

## A.     Factual Background

Plaintiffs William Fortner and Autumn McManus, along with opt-in Plaintiff Allison Jones, are former employees of Defendants, who own and operate the North Beach Resort in North Myrtle Beach, South Carolina. (Compl. ¶¶ 1, 21–25, DE 1 at 1–2, 7.) The resort features multiple dining venues, including 21 Main Prime Steakhouse, Cabana Club Poolside Bar & Grill, North Beach Pizza Co., and 21 Main Events, which employ servers and bartenders in tipped positions. (*Id.* ¶¶ 26–34, DE 1 at 8–9.)

Plaintiffs allege that they, along with over one hundred similarly situated servers and bartenders, were subject to common compensation policies that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Specifically, Plaintiffs claim that Defendants paid them subminimum hourly wages—$2.13 per hour for servers and $4.50 per hour for bartenders—while claiming a tip credit of $5.12 and $2.75 per hour, respectively. (*Id.* ¶¶ 50, 54, DE 1 at 13.) Plaintiffs contend that Defendants failed to satisfy the FLSA's tip-credit notice requirements under 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, as the written notice provided (the "Tipped Employee Agreement") did not include the actual cash wage to be paid or the amount of the tip-credit to be claimed. (*Id.* ¶¶ 87–93, DE 1 at 17–18; *see also* Fortner Decl. ¶¶ 13–18, DE 12-1 at 3–4; McManus Decl. ¶¶ 19–27, DE 12-2 at 3–5; Jones Decl. ¶¶ 16–20, DE 12-3 at 3–4.)

Plaintiffs also allege that Defendants improperly deducted or diverted tips by requiring servers and bartenders to share tips with managers or to use tip income to

cover cash register shortages. (Compl. ¶¶ 59–61, 91–93, DE 1 at 14, 18.) These practices allegedly occurred regularly, particularly at the Poolside Bar & Grill and during event catering shifts at 21 Main Events. (Fortner Decl. ¶¶ 19–28, DE 12-1 at 4–5; McManus Decl. ¶¶ 28–49, DE 12-2 at 5–7; Jones Decl. ¶¶ 21–42, DE 12-3 at 4–6.)

Plaintiffs also claim that when employees worked more than forty hours in a workweek across multiple venues or positions, Defendants failed to calculate overtime using the correct blended rate, under 29 C.F.R. § 778.115. (*Id*. ¶¶ 86–91, DE 1 at 17–18; *see* Fortner Decl. ¶¶ 53–62, DE 12-1 at 8–9; McManus Decl. ¶¶ 56–66, DE 12-2 at 8–10; Jones Decl. ¶¶ 52–61, DE 12-3 at 8–9.) Plaintiffs assert that this occurred when employees split time between bartender and server roles, or worked in different venues during the same week.

Plaintiffs state that these wage-and-tip practices were common across Defendants' resorts and were applied uniformly to all tipped employees, regardless of venue or job title. (*See* Fortner Decl. ¶¶ 63–66, DE 12-1 at 10; McManus Decl. ¶¶ 67–75, DE 12-2 at 10–11; Jones Decl. ¶¶ 62–64, DE 12-3 at 10.) Plaintiffs allege that Defendants exercised centralized control over pay practices and scheduling, further supporting their assertion that the proposed collectives are similarly situated.

## B.     Procedural Background

Plaintiffs filed this action on October 15, 2024, alleging violations of the FLSA and the South Carolina Payment of Wages Act. (Compl., DE 1.) The complaint lists these causes of action:

3

- Count I – Collective Action for Federal Minimum Wage Violations (On Behalf of Fortner, McManus, and the Bartender Tip-Credit Notice Collective)

- Count II – Collective Action for Federal Minimum Wage Violations (On Behalf of McManus and the Server Tip-Credit Notice Collective)

- Count III – Federal Minimum Wage Violations (On Behalf of Fortner, McManus, and the Bartender Tip-Share Collective)

- Count IV – Federal Minimum Wage Violations (On Behalf of McManus and the Server Tip-Share Collective)

- Count V – Federal Overtime Wage Violations (On Behalf of Fortner, McManus, and the Bartender Tip-Credit Notice Overtime Collective)

- Count VI – Federal Overtime Wage Violations (On Behalf of McManus, and the Server Tip-Credit Notice Overtime Collective)

- Count VII – Federal Overtime Wage Violations (On Behalf of Fortner, McManus, and the Bartender Multiple-Rate Overtime Collective)

- Count VIII – Federal Overtime Wage Violations (On Behalf of McManus, and the Server Multiple-Rate Overtime Collective)

- Count IX – South Carolina Payment of Wages Act Violations (On Behalf of Fortner, McManus, and the Bartender Class)

- Count X – South Carolina Payment of Wages Act Violations (On Behalf of McManus and the Server Class)

- Count XI – Retaliation in Violation of the Fair Labor Standards Act (FLSA) (On behalf of Fortner)

(*Id.* ¶¶ 95–291, DE 1 at 18–55.)

In conjunction with their Complaint, Plaintiffs also filed a "Placeholder" Motion for Class Certification under Federal Rule of Civil Procedure 23, seeking to preserve state-law claims on behalf of a putative class of servers and bartenders.[1]

---

[1]    In their Placeholder Motion for Class Certification on their South Carolina Payment of Wages Act claims, Plaintiffs propose the following class definitions under Federal Rule of Civil Procedure 23:

4

(DE 5.) Defendants filed a Response in Opposition on November 26, 2024, challenging the propriety and timing of the placeholder motion. (DE 22.)

On November 12, 2024, Plaintiffs filed a Motion for Conditional Certification of FLSA Collective Action under 29 U.S.C. § 216(b), requesting that the Court conditionally certify eight distinct opt-in collectives, as follows:

1. **Server Tip-Credit Notice Collective**: Servers paid less than minimum wage without proper notice of tip credit;

2. **Bartender Tip-Credit Notice Collective**: Bartenders paid less than minimum wage without proper notice of tip credit;

3. **Server Tip-Credit Overtime Collective**: Servers who worked overtime without proper tip credit notice;

4. **Bartender Tip-Credit Overtime Collective**: Bartenders who worked overtime without proper tip credit notice;

5. **Server Tip-Share Collective**: Servers who were required to share tips with supervisors or cover shortages;

6. **Bartender Tip-Share Collective**: Bartenders who were required to share tips with supervisors or cover shortages;

7. **Server Multiple-Rate Overtime Collective**: Servers paid at multiple hourly rates with improper overtime calculations;

8. **Bartender Multiple-Rate Overtime Collective**: Bartenders paid at multiple hourly rates with improper overtime calculations.

---

**Bartender Class**: All Bartenders who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage who do not affirmatively opt-out.

**Server Class**: All Servers who worked for Defendants at any venue owned and/or operated at North Beach Resort in South Carolina during the previous three (3) years who were paid a direct cash wage of less than minimum wage who do not affirmatively opt-out.

(DE 5 at 3.) Plaintiffs reserve the right to amend the class definitions following class certification discovery.

5

(DE 12 at 2–3.)

In support, Plaintiffs submitted declarations detailing their personal experiences and attesting to the existence of similarly situated employees who would join the lawsuit upon receipt of notice. (*See generally* Fortner Decl., DE 12-1; McManus Decl., DE 12-2; Jones Decl., DE 12-3.) Defendants opposed conditional certification on January 3, 2025 (DE 31), arguing that Plaintiffs failed to show common policies applicable to all proposed collective members and citing conflicting declarations from current employees. Plaintiffs filed their reply on January 20, 2025. (DE 34.)

Defendants also moved to dismiss Counts I and II of the Complaint and for a more definite statement, arguing that the claims failed to state a plausible claim for relief and that the Complaint was improperly structured. (DE 15.) On June 24, 2025, the Court denied the motion, concluding that Plaintiffs plausibly alleged that the tip-credit notice provided was facially deficient under 29 C.F.R. § 531.59, and that the Complaint met the standards of Rule 8. (Order at 6–9, DE 37.)

Plaintiffs' Motion for Conditional Certification and Placeholder Motion for Class Certification are now ripe for adjudication.

## II.     LEGAL STANDARD

### A.     The FLSA Collective Action Certification Process

Under the FLSA, private plaintiffs may bring a collective action on their own behalf and on behalf of other employees "similarly situated." 29 U.S.C. § 216(b) (2018). The statute provides:

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

The Supreme Court has emphasized the importance of "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court further held that district courts have discretionary authority to facilitate notice to potential plaintiffs. *Id.* at 169, 174.

Although neither the Supreme Court nor the Fourth Circuit has adopted a definitive approach to certifying collective actions under the FLSA, most federal courts—including those in this Circuit—have adopted the two-step certification process outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*, *Winks v. Va. Dep't of Transp.*, No. 3:20-cv-482, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021); *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009).

At the first step, known as the "notice stage," the court makes a preliminary determination—typically before substantial discovery—whether the named plaintiff has made "a modest factual showing" that other potential plaintiffs are similarly situated. *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367–68 (D.S.C. 2012); *Amoko v. N&C Claims Serv., Inc.*, 577 F. Supp. 3d 408, 415 (D.S.C.

7

2021). If so, the court conditionally certifies the collective action and authorizes court-supervised notice to potential opt-in plaintiffs. *Id.* at 368.

At the second stage, usually triggered by a motion to decertify following discovery, the court applies a more rigorous standard to determine whether the named and opt-in plaintiffs are in fact similarly situated. *Amoko*, 577 F. Supp. 3d at 415. If the court concludes that they are not, it may decertify the collective action, dismiss the opt-in plaintiffs without prejudice, and allow the named plaintiff(s) to proceed individually. *Id.* at 413−414.

## B.     Rule 23, Fed. R. Civ. P.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The prerequisites for class certification are governed by Rule 23(a) of the Federal Rules of Civil Procedure, which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

1.     the class is so numerous that joinder of all members is impracticable;

2.     there are questions of law or fact common to the class;

3.     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.     the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P.

These four elements are known as "numerosity," "commonality," "typicality," and "adequacy of representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004). In addition to satisfying Rule 23(a), the proposed class must also fall within one of the categories listed in Rule 23(b). *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).

When, as here, a plaintiff proceeds under Rule 23(b)(3), the court must find that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" (the "predominance" requirement), and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement). Rule 23(b)(3), Fed. R. Civ. P.; *Gariety*, 368 F.3d at 362. The predominance standard is "far more demanding" than the commonality requirement under Rule 23(a)(2). *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citation omitted).

Additionally, Rule 23 contains an implicit "ascertainability" requirement: the proposed class must be "readily identifiable." *EQT Prod. Co.*, 764 F.3d at 358. While the identities of all class members need not be known at the time of certification, the class must be defined clearly enough so that there is "an administratively feasible [way] for the court to determine whether a particular individual is a member[.]" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019).

The burden is on the party seeking certification to affirmatively demonstrate compliance with Rule 23, and each element must be proven by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir.

2012). If any one of the Rule 23 requirements is not met, class certification must be denied. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) ("Class actions must meet several criteria," including satisfaction of the Rule 23(a) prerequisites).

District courts must perform a rigorous analysis to determine whether the Rule 23 requirements are met. *See Gariety*, 368 F.3d at 365 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). This analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. However, courts must avoid prematurely deciding the merits of the case and should not certify a class based on a mere likelihood of success. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974); *Gariety*, 368 F.3d at 366.

## III.  DISCUSSION

### A.    Placeholder Motion for Class Certification

Plaintiffs seek to provisionally certify two Rule 23 classes under the South Carolina Payment of Wages Act ("SCPWA"), one consisting of all bartenders and one of all servers employed at any venue operated by Defendants within the past three years, who were paid less than the minimum wage. (DE 5 at 2–3; *see also supra* text accompanying note 1.) Plaintiffs allege that Defendants failed to pay all wages due, including earned tips, minimum wages, and overtime compensation, as required by state law. Plaintiffs allege, among other things, that:

- Defendants required servers and bartenders to surrender portions of their earned tips to cover cash register shortages and to share tips with managers and supervisors, which constitutes an unlawful deduction under the SCPWA (Compl. ¶¶ 59–70, 229–235, 252–258, DE 1 at 14–15, 44–45, 49–50).

10

- Plaintiffs were also not compensated for all hours worked, particularly during special events, and were paid sub-minimum wages without notice or proper accounting for tips, in violation of South Carolina wage statutes (*id.* ¶¶ 71–78, DE 1 at 15–16).

- Plaintiffs contend that these practices amount to a willful failure to pay wages when due, which is actionable under the SCPWA (*id.* ¶¶ 243–266, DE 1 at 47–52).

The SCPWA "is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld." *Degidio v. Crazy Horse Saloon & Rest., Inc.*, 190 F. Supp. 3d 499, 504 (D.S.C. 2016) The act provides in part:

> An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of § 41-10-30.

*Id.* at 501 (quoting S.C. Code Ann. § 41–10–40). "[T]ips meet the definition of wages under the SCPWA." *Id.* at 504.

Plaintiffs assert that this placeholder motion is necessary to preserve their ability to pursue class-based state-law claims pending class discovery. Even so, Plaintiffs have not met their burden of proving that the proposed classes satisfy the threshold requirements of Rule 23 of the Federal Rules of Civil Procedure.

### 1.     Inadequacy of the Placeholder Motion

Although some courts previously entertained placeholder class motions to preserve putative class members' rights, such tactics are generally disfavored after the Supreme Court decided *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), which foreclosed attempts to moot class actions through unaccepted offers of judgment. As recognized in *Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, No. 3:15-

cv-05061-JMC, 2022 WL 3337761, at *6 (D.S.C. Aug. 12, 2022), placeholder motions are improper when they fail to provide the Court with a basis for evaluating the Rule 23 factors. In *Career Counseling*, the court denied class certification where the plaintiff had not attempted to apply the Rule 23 factors. *Id*.

Here, Plaintiffs have merely asserted two conclusory class definitions and expressed a general intent to preserve their class claims. (DE 5 at 2–3.) They have not submitted evidence, affidavits, or legal argument addressing Rule 23(a)'s required elements—numerosity, commonality, typicality, or adequacy of representation. Nor have they offered any factual support regarding predominance, superiority, or ascertainability under Rule 23(b)(3). Courts must conduct a "rigorous analysis" of these prerequisites, and a party's failure to affirmatively demonstrate compliance with each factor by a preponderance of the evidence is fatal to certification. *Gariety*, 368 F.3d at 365; *Messner*, 669 F.3d at 811.

### 2.     Rule 23 Factors Not Satisfied

Plaintiffs' motion does not address whether the proposed classes are "readily identifiable" or "ascertainable," under Fourth Circuit precedent. *See EQT Prod. Co.*, 764 F.3d at 358; *Krakauer*, 925 F.3d at 658. And there is no showing that the class representatives will fairly and adequately protect the interests of absent class members, nor any discussion of the extent to which common legal or factual issues predominate over individualized inquiries. (DE 5.) *See* Rule 23(a), Fed. R. Civ. P.; *id*. 23(b)(3); *Thorn*, 445 F.3d at 319.

As a result, the Court is left without any evidentiary or legal foundation to evaluate whether class treatment is appropriate under the SCPWA claims. *See Gunnells v*, 348 F.3d at 423 (noting that class certification must be denied if any of Rule 23's requirements are not met). While Plaintiffs assert their right to amend their motion after discovery (DE 5 at 3), they provide no legal authority supporting a "provisional" grant or a procedural mechanism to reserve certification in the absence of a proper Rule 23 analysis.

Accordingly, because Plaintiffs have failed to satisfy any of the procedural or substantive requirements of Rule 23, their placeholder motion must be denied without prejudice.

## B.     Conditional Certification of FLSA Collective Action

Plaintiffs seek conditional certification of eight distinct FLSA collectives comprised of servers and bartenders who were allegedly subject to uniform wage and tip practices that violated the FLSA. (DE 12 at 2–3.) Conditional certification of a collective action under the FLSA is governed by 29 U.S.C. § 216(b). Congress enacted § 216(b) to enable plaintiffs to benefit from "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche Inc.*, 493 U.S. at 170 (interpreting § 216(b) as incorporated into the Age Discrimination in Employment Act). The Supreme Court emphasized that the primary objective of § 216(b) is judicial efficiency and reaffirmed the court's "managerial responsibility ... to assure that the [joinder of additional parties] is accomplished in an efficient and proper way." *Id.* at 170–71; *see Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th

Cir. 1992) (explaining that "district courts have discretion, in appropriate cases, to implement § 216(b)").

Having reviewed the parties' submissions, the Court finds that Plaintiffs have satisfied their burden at this preliminary stage under the *Lusardi* framework, and conditional certification is appropriate.

At the notice stage, the standard for conditional certification is lenient. Plaintiffs must make only a modest factual showing that they and the proposed opt-in plaintiffs are "similarly situated." *Pelczynski*, 284 F.R.D. at 367; *Firestone v. Food Concepts, LLC*, No. 3:22-cv-00185-MGL, 2023 WL 2652576, at *3 (D.S.C. Mar. 27, 2023). The Fourth Circuit has not adopted a more stringent standard such as that advanced in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), or *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023), and courts within this District have consistently declined to follow those decisions.[2] This Court joins its sister courts in continuing to apply the two-step *Lusardi* approach. *See Firestone*, 2023 WL 2652576, at *3; *Wolff v. Backstreets Grill SC, LLC*, No. 2:21-cv-02873, 2022 WL 14763223, at *2 (D.S.C. Oct. 25, 2022).

Here, Plaintiffs' declarations and pleadings adequately allege common unlawful practices affecting a defined group of tipped employees:

---

[2]     Defendants urge the Court to depart from the two-step conditional certification framework outlined in *Lusardi* and instead adopt the standards established in *Swales* or *Clark*, which require a more searching merits-based inquiry before notice issuance. (DE 31 at 6–9.) Yet this Court—like most district courts within the Fourth Circuit—continues to apply the *Lusardi* approach at the notice stage, which requires only "a modest factual showing" that the named plaintiffs and potential opt-in plaintiffs are similarly situated, unlike a *heightened, fact-specific* standard at the second phase. *See Pelczynski*, 284 F.R.D. at 367; *Amoko*, 577 F. Supp. 3d at 415.

1.    **Tip Credit Notice Violations:** Plaintiffs allege that they and similarly situated servers and bartenders were paid less than the federal minimum wage while Defendants claimed a tip credit without providing the written notice required by 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59. (*See* DE 12-1 ¶¶ 13–18; DE 12-2 ¶¶ 19–27; DE 12-3 ¶¶ 16–20.) Failure to provide this notice renders the tip credit invalid as a matter of law. *See Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 447 (4th Cir. 2015).

2.    **Improper Tip Retention and Sharing:** Plaintiffs also allege that Defendants required tipped employees to share gratuities with supervisory staff and/or use their tips to cover cash register shortages—practices that violate 29 U.S.C. § 203(m)(2)(B) and preclude any reliance on a tip credit. (*See* DE 1 ¶¶ 48–58; DE 12-1 ¶¶ 19–28; DE 12-2 ¶¶ 28–49; DE 12-3 ¶¶ 21–42.) *See also Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *29 C.F.R. § 531.54(b).*

3.    **Overtime Miscalculations Across Multiple Rates:** Plaintiffs claim that when they worked in dual roles or across multiple venues for varying rates of pay, Defendants failed to properly calculate overtime based on the weighted average of those rates, in violation of 29 C.F.R. § 778.115. (*See* DE 12-1 ¶¶ 53–62; DE 12-2 ¶¶ 56–66; DE 12-3 ¶¶ 52–61.) Uniform failure to comply with this regulation supports collective adjudication. *See Firestone*, 2023 WL 2652576, at *5.

Plaintiffs contend that these unlawful practices were not isolated but stemmed from uniform policies enforced across multiple dining venues within the North Beach Resort. (*See* Fortner Decl. ¶¶ 63–66, DE 12-1 at 10; McManus Decl. ¶¶ 67–75, DE 12-2 at 10–11; Jones Decl. ¶¶ 62–64, DE 12-3 at 10.) Courts have routinely held that those common allegations, especially when supported by sworn declarations, are sufficient to establish that members of a collective are similarly situated. *See Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008); *Graham v. Hall's Southern Kitchens, LLC*, 331 F.R.D. 619, 622 (D.S.C. 2018).

And Plaintiffs have identified former coworkers who were subject to the same wage practices and who would likely join the case if court-authorized notice is issued.

15

(*See* Fortner Decl. ¶¶ 64–65, DE 12-1 at 10; McManus Decl. ¶ 72, DE 12-2 at 11; Jones Decl. ¶¶ 62–64, DE 12-3 at 10.) At least one opt-in plaintiff has submitted a consent form. (*See* DE 11-1.) Courts have recognized that such evidence satisfies the requirement that potential plaintiffs "desire to opt in." *See Amoko*, 577 F. Supp. 3d at 413; *Essame v. SSC Laurel Operating Co.*, 847 F. Supp. 2d 821, 825 (D. Md. 2012).

The Court has considered Defendants' argument that Plaintiffs' proposed collectives would be unmanageable and would hinder, rather than promote, the efficient resolution of claims based on the necessity of individualized inquiries. Defendants contend that factual variations among Servers and Bartenders—such as differing job roles, pay rates, tip-sharing practices, and overtime calculations—would require numerous mini-trials, rendering collective treatment inappropriate under the FLSA.

Upon review, the Court finds that these concerns, while not unfounded, are premature at the conditional-certification stage. The conditional-certification standard imposes a low burden, requiring Plaintiffs to make only a modest factual showing that they and the putative collective members are similarly situated. Plaintiffs have presented declarations and records reflecting common practices, policies, and experiences that plausibly support such a finding. Notably, this case is distinguishable from several cases cited by Defendants, where collective certification was denied due to the lack of reliable records or claims rooted in individualized exemption defenses. Here, Plaintiffs allege systemic practices, and Defendants

acknowledge the existence of relevant time and payroll records, reducing the likelihood of speculative or individualized fact-finding at this stage.

While Defendants challenge the uniformity of these practices, their objections—supported by declarations from current employees—raise factual disputes that are more appropriately resolved at the decertification stage. These so-called "happy camper" declarations, offered to contradict Plaintiffs' accounts, do not preclude conditional certification. Courts routinely decline to weigh or credit such competing affidavits at this early stage, particularly where they may reflect employee loyalty or fear of reprisal. At this initial phase, courts do not weigh evidence, assess credibility, or resolve the merits. *See Chapman v. Saber Healthcare Group, LLC*, 623 F. Supp. 3d 664, 678 (E.D. Va. 2022); *Grosscup v. KPW Mgmt., Inc.*, No. 16-cv-1044, 2017 WL 24615338, at *6 (N.D. Ill. June 7, 2017).[3]

The Court is also unpersuaded by Defendants' reliance on cases involving exemption classifications, arbitration agreements, or claims based on isolated conduct by individual supervisors. The allegations here pertain to broader, company-wide practices that, at least at this stage, appear capable of being adjudicated collectively.

Accordingly, the Court finds that Defendants' manageability arguments do not warrant denial of conditional certification. These concerns may be revisited at the

---

[3]    Courts have consistently questioned employer-submitted "happy camper" declarations at the conditional certification stage, noting that such affidavits are often drafted under managerial supervision and reflect employer-favorable bias. *See Spencer v. Macado's Inc.*, 2019 WL 4739691, at *4 (W.D. Va. Sept. 27, 2019); *Thomas v. Maximus, Inc.*, 2022 WL 1482010, at *6 (E.D. Va. May 10, 2022).

decertification stage, when the record has been more fully developed and the Court is in a better position to evaluate the practical implications of proceeding collectively.

Since Plaintiffs have made a sufficient factual showing that they and the putative collective members are similarly situated under 29 U.S.C. § 216(b), and because conditional certification will facilitate court-supervised notice without prejudice to future reconsideration of collective status, the Court finds that conditional certification is warranted as to each of the eight proposed collectives. (*See* DE 12 at 2–3.) That said, the Court conditionally certifies the following eight collectives:

- Server Tip-Credit Notice Collective
- Bartender Tip-Credit Notice Collective
- Server Tip-Credit Overtime Collective
- Bartender Tip-Credit Overtime Collective
- Server Tip-Share Collective
- Bartender Tip-Share Collective
- Server Multiple-Rate Overtime Collective
- Bartender Multiple-Rate Overtime Collective

C.    **Form of Notice and Materials**

The Court has considered the parties' respective arguments concerning the proposed form and method of notice to be issued to potential opt-in plaintiffs. Defendants oppose Plaintiffs' proposed notice procedures on several grounds:

- the opt-in period should be limited to 60 days rather than the requested 90 days;

- reminder notices should not be permitted;

- dissemination should be limited to U.S. mail, excluding email, text message, or workplace posting; and

- production of email addresses, telephone numbers, and the last four digits of Social Security numbers is unwarranted and unsupported by a "special need[.]"

(*See* DE 31 at 31–35.)

Upon review of the record, the Court finds that Defendants' objections are unpersuasive at this preliminary stage. Plaintiffs have made an adequate showing that their proposed notice procedures are reasonably calculated to ensure effective dissemination of notice to potential opt-in plaintiffs, particularly in light of the transient and seasonal nature of employment in the restaurant and hospitality industry (*see* DE 12 at 22–26; DE 34 at 10–11). Although Plaintiffs cite no case in which a 90-day opt-in period was approved based on difficulty reaching potential class members by mail alone, the Court finds that the request is consistent with the remedial goals of the FLSA and may be appropriate given the transient nature of the restaurant workforce alleged here. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011) ("While some courts have granted up to 90 day

19

opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period.) Likewise, Plaintiffs' request for a single mid-point reminder is not inherently coercive, and courts have approved such reminders as part of a balanced notification process, particularly in FLSA actions with high turnover rates among potential opt-ins (*see* DE 12 at 26; DE 34 at 10).

As to the method of dissemination, the Court finds that limiting notice solely to U.S. mail would unduly restrict the likelihood that all eligible individuals are actually informed of their rights. Plaintiffs have identified a credible need to supplement mail delivery with email and, where feasible, text message dissemination to ensure comprehensive reach. Courts have increasingly approved these methods in recognition of modern communication norms and workforce mobility (*see* DE 12 at 23–24; DE 34 at 10–11). Plaintiffs have also shown that limited identifiers such as the last four digits of Social Security numbers may be necessary to accurately identify potential collective members. While courts generally require a showing of "special need" for such disclosures, Plaintiffs' rationale—supported by declarations describing inconsistent contact information and high turnover—is sufficient at this juncture to warrant consideration of these means (*see* DE 12 at 24; DE 34 at 10).

Still, the Court recognizes the importance of safeguarding privacy and avoiding undue burden on Defendants. Therefore, while the Court finds Plaintiffs' proposals facially reasonable and consistent with established FLSA practices, it will *not* approve the form and method of notice in their entirety at this time. Instead, the

20

parties are directed to meet and confer in good faith **within 14 days of this Order** to resolve any outstanding issues related to:

- The form and content of the notice and consent-to-join forms;

- The length of the opt-in period;

- Whether a reminder notice will be issued and its timing;

- The permitted methods of dissemination (mail, email, text, workplace posting); and

- The scope of contact information to be disclosed (names, addresses, phone numbers, email addresses, SSN digits).

If the parties agree, they shall jointly submit the final proposed notice materials and schedule for Court approval **within 21 days of this Order**. If disputes remain, the parties shall submit a joint status report identifying areas of agreement and separately stating their respective positions on unresolved issues. The Court will then rule on any outstanding matters and designate Plaintiffs' counsel to represent the interests of the collective at the notice stage of this case.

## IV. CONCLUSION

For these reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motions (DE 5; DE 12) as follows:

1.    Plaintiffs' Motion for Conditional Certification of a Collective Action under the Fair Labor Standards Act (DE 12) is **GRANTED**. The Court conditionally certifies the following eight collectives under 29 U.S.C. § 216(b):

   a.    Server Tip-Credit Notice Collective;

   b.    Bartender Tip-Credit Notice Collective;

   c.    Server Tip-Credit Overtime Collective;

21

      d.      Bartender Tip-Credit Overtime Collective;

      e.      Server Tip-Share Collective;

      f.      Bartender Tip-Share Collective;

      g.      Server Multiple-Rate Overtime Collective; and

      h.      Bartender Multiple-Rate Overtime Collective.

2.      The parties are **ORDERED** to meet and confer in good faith regarding the content, form, and distribution of the proposed notice and consent-to-join forms. Within **twenty-one (21) days of the entry of this Order**, the parties shall file either a joint proposed notice or competing versions for the Court's consideration.

3.      Plaintiffs' Placeholder Motion for Class Certification under Rule 23 of the Federal Rules of Civil Procedure (DE 5) is **DENIED WITHOUT PREJUDICE**. Plaintiffs may file a renewed motion for class certification supported by evidentiary and legal materials consistent with Rule 23, after completing appropriate discovery.

      IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 1, 2025

22